These are appeals from the final judgment of the Pickaway County Court of Common Pleas in the cases numbered 20661 and 97-C1-161 upon its docket, which had been consolidated, in the words of the court, for judicial economy since the same underlying facts and law were applicable to both cases.
The order from which the appeals derive determined motions for summary judgment and for the dismissal of parties by granting summary judgment in favor of Asa J. Elsea, individually, Elsea, Inc., and the Estate of Maxine L. Elsea. The pivotal issue before the court was, again in the court's words, whether the doctrine of a constructive trust was applicable to the facts asserted by the claimants in the case numbered 97-C1-161.
The singular assignment of error is:
 The trial court erred in granting summary judgment in favor of appellees, and in dismissing them as parties, on the ground that appellants were not entitled to the remedy of constructive trust against Maxine Elsea and her estate and were only entitled, therefore, to receive from her estate monies equal to their proportionate share of the original disentailment sale proceeds produced in 1952 in Case No. 20661.
 The predicate for the assignment which raises the issue is:
 Whether remaindermen have a right to the impressing of a constructive trust against an estate of a trustee appointed under Ohio's disentailment statutes who had a life estate interest in the disentailment sale proceeds, but who breached her fiduciary duties toward the remaindermen by personally consuming some of the proceeds and by investing the rest in investments which were improper under those statutes.
In an effort to give some clarity to our resolution of the assignment of error, we have digested the allegations of the complaint, all of which disclose a convoluted pattern of events which have transpired over more than five decades.
On May 1, 1944, the will of Jacob Barthelmas was admitted to probate in Pickaway County. One of its provisions referred to real property known as the George Betts Farm in these terms:
 To William Barthelmas and Maxine Elsea, as tenants in common for and during their natural lives, with the privilege of either selling his or her life estate to the other: They may control and manage the farm as tenants in Common as long as they hold same together: At the death of William Barthelmas or Maxine Elsea his or her part of said farm is to pass to his or her living children in fee simple, with the further provision that if any child or children of either be dead at the time of the death of the parent and such child or children leaving a child or children such child or children shall take its parent share.
On April 1, 1952, William Barthelmas and Maxine Elsea filed the case numbered 20661 seeking authority to sell the entailed estate, i.e., the Betts Farm. At that time, Beverly Ann Jones, the plaintiff below in the case numbered 97-C1-161, and her two brothers Thomas Elsea and Asa J. Elsea, defendants in that case, were minor children of Maxine Elsea. Joined with Beverly Ann Jones as plaintiffs were Richard Ryan Elsea, Jayne Elsea Darfus and Thomas Barthelmas Elsea, grandchildren of Maxine Elsea whose father, Thomas Elsea, was the deceased son of Maxine Elsea.
On October 27, 1952, the court approved the sale of the Betts Farm and, inter alia, ordered that $19,774.37 of the proceeds be distributed to Maxine Elsea as trustee, directing her to invest the trust fund in accordance with the statutory law and to report all proposed investments to the court for approval. Resultantly, Maxine Elsea applied same two months later to loan those funds to her husband, Robert, who was to execute a first mortgage upon a 61.215-acre farm (the "Elsea Farm") located in Circleville Township, Pickaway County.
On February 7, 1953, Maxine Elsea reported to the court that she had invested $16,000 to purchase the Elsea Farm from Emma Elsea, the deed to which was in the name of Maxine Elsea and her husband, Robert, who executed a mortgage jointly to Maxine Elsea as trustee. Maxine Elsea made no further accounts as trustee, but on September 14, 1970, she, as trustee, released the mortgage.
On May 18, 1996, Maxine Elsea died, and the defendant, Asa J. Elsea, was appointed executor of her estate. Prior to her death, Maxine and her husband, Robert, had transferred most of their interests in the Elsea Farm to an entity known as Elsea, Inc. That corporation was controlled by Maxine and Robert Elsea, and all of its stock was inherited by Asa J. Elsea. Only 1.248 acres of the original tract remained in Maxine Elsea's name, and Asa J. Elsea inherited it through her will.
On May 9, 1997, the plaintiffs filed their claim against the estate seeking the imposition of a constructive trust on all assets obtained by Maxine Elsea by the usages of the assets of the trust established by the court on December 10, 1952, in the case numbered 20661. On May 22, 1997, the claim was rejected and the subject litigation was commenced July 18, 1997.
The entry of the court journalized October 21, 1997, from which these appeals are taken, contains this language:
 The Court having further considered the pleadings, the briefs and oral arguments of counsel, finds that Asa J. Elsea, individually, and Elsea, Inc. are each entitled to be dismissed as parties to both cases. The Court further finds, upon representations of counsel, that the Estate of Maxine L. Elsea is solvent and that Asa J. Elsea, individually, and Beverly Ann Jones are each entitled to recover from the Estate of Maxine L. Elsea the sum of $6,492.46, plus 10% interest per annum computed from May 18, 1996 and that Richard Ryan Elsea, Jane Elsea Darfus and Thomas Barthelmas Elsea, the children of Thomas Elsea are each entitled to recover from the Estate of Maxine L. Elsea the sum of $2,164.15, plus 10% interest per annum computed from May 18, 1996.
On August 18, 1997, the court filed its decision in the casesub judice. In a thirteen-page, detailed dissertation of the facts and the law, we are given the reasons for the refusal to impose a constructive trust as prayed for by the several plaintiffs. The introductory paragraph of that decision states, "[T]his case is now before the Court for ruling upon a motion for summary judgment filed by the plaintiffs * * *." The court goes on to state what is indisputably the law. Under Civ.R. 52, judgment can be rendered only when there is no genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law.
Our review of the record in its entirety convinces us that the court erred in granting summary judgment as it did because there exists one or more genuine issues of material fact which can be resolved only upon a plenary evidentiary hearing.
To begin with, there can be no doubt that Maxine Elsea as trustee changed the identity of the corpus of the fund entrusted to her. When her life estate was sold with the approval of the court in October 1952, she was ordered to invest $19,774.37 in harmony with applicable statutory law. It is also a fact not disputed by the parties that Maxine Elsea did not so invest the money and, instead, purchased the Elsea Farm from Emma Elsea and took title to it in her name individually and in that of her husband, Robert. Arguably, that action constituted a conversion of trust assets, but even if that characterization is questioned, it remains clear that the original asset of the trust for the beneficiaries,i.e., cash, was transformed into real estate. That clear change of character becomes more significant in law by virtue of the undeniable fact that Maxine Elsea accomplished it without resort to the court and without filing appropriate accounts.
On appeal, the plaintiffs express a salient inquiry in their brief in these words:
 By consuming nearly 20 percent of the trust funds in 1952-1954, by spending the remaining 80 percent to directly purchase the Elsea farm in her own and her husband's name in 1952, and by failing to obtain and reinvest any trust fund repayments in 1970 when she released the mortgage on that farm, Maxine denied [plaintiffs] the trust fund security to which they were entitled.
The spectre of fraud by Maxine Elsea is addressed again in detail in the reply brief of the plaintiffs filed in this court on May 26, 1998. In particular, they cite to paragraphs 14et seq. of their complaint, which provide the foundation for their allegation. When the motion to reconsider the court's decision of August 18, 1997, was heard on September 12, 1997, counsel for the plaintiff's addressed this question to the court and opposing counsel:
 May I understand then that for the purposes of the consideration of our pending motion the court will assume solely for that purpose that we will establish that Maxine Elsea did not invest in a note, but she did, in fact, purchase the Elsea farm and used all of the rest of the money similarly for her personal benefit without any authority from the court?
The plaintiffs never received an unequivocal answer, but the court appears to have taken that to be true in deciding the matter adversely to the plaintiffs.
In their motion for summary judgment, Asa J. Elsea, as executor of the Estate of Maxine Elsea, Asa J. Elsea, individually, and Asa J. Elsea, as president of Elsea, Inc., stated, correctly we think, that:
 [T]he * * * issue before [the court of common pleas] is what assets do the remaindermen have upon the death of Maxine Elsea and the subsequent termination of the trust."
They then submitted that:
 [E]ven assuming * * * that a constructive trust could be imposed, [the remaindermen] would only be permitted to trace the corpus of trust [sic] and would only be entitled to recover their proportionate share of the corpus * * * and interest accruing on that sum from the date of death forward.
In context, they argued that:
 In this case, Movants waited for over 27 years to bring an action. As the remaindermen, they had standing to demand an accounting from the Trustee. If the action had been brought even several years earlier, an argument of prejudice might have been difficult to win. Until just over a year ago, Maxine Elsea was alive and available to testify as to all her actions. Rather, Movants wait until the death of the one person who has full knowledge of all the events before filing this suit. As a result, Maxine Elsea is not available to testify; documents have been destroyed, lost or otherwise misplaced; and it is impossible to reverse the alleged improper conduct of Maxine Elsea.
Resultantly, they concluded the burden was upon the remaindermen to "explain the delay and to show that it would be inequitable to enforce the doctrine of laches." However persuasive this argument may have been under applicable circumstances, the court below did not decide the matter adversely to the remaindermen on that basis.
The remaindermen's response to the argument that their claim should have been barred by laches or "the applicable statute of limitations, R.C. 2305.09, was that "Maxine Elsea successfully concealed the evidence of her malfeasance [her fraud and breach of fiduciary duty] throughout * * * her life," and that this was "not a case in which Maxine Elsea's acts were fully disclosed on the public record."
The riposte of the remaindermen to the submission that they were not harmed by Maxine Elsea's alleged fraud and breach of fiduciary duty was that R.C. 5303.27 was designed to maximize protection for the remaindermen's interest in the corpus of the trust funds generated by disentailment of the real property.
It is the second substitution, the second change of identity of the corpus from cash to real estate (the Elsea Farm) and the subsequent creation of a corporation (Elsea, Inc.) into which the corpus seems to have been absorbed, that creates the question of law unique to this case.
The remaindermen submitted in their reply memorandum filed September 19, 1997, that:
 What Maxine Elsea did in direct contravention of this Court's Orders was to change the corpus of the trust from cash to an investment in real estate, namely the Elsea farm. That real property has been utilized for the Elsea family business as property upon which mobile homes are placed and the individual home owners lease the home lots from the Elsea family business which Maxine Elsea and her husband operated during their lifetimes. Maxine Elsea enjoyed the benefit of the income from the corpus (rents from the Elsea farm property) during her life just as she could have enjoyed the interest on the investment if she had invested it in accordance with this Court's Order. Movants do not seek to recover those rents to which Maxine Elsea was entitled during her lifetime as the holder of the life estate in the Elsea farm. However, the principal or corpus of the trust became the Elsea farm together with any other assets that can be traced directly to her investments.
When the case sub judice is considered in its entirety, the identity of the corpus at the time of the demise of Maxine Elsea, i.e., May 18, 1996, when it passed to the remaindermen under terms of the trust, becomes a question of fact of critical importance to the resolution of the legal claims involved. The existence of this question, in combination with those alluded to supra, makes the trial court's application of Civ.R. 56 erroneous as a matter of law.
For the reasons we have given, the assignment of error is well taken and is sustained. The judgment of the Pickaway County Court of Common Pleas, journalized in the case numbered 97-C1-161, is reversed, and this cause is remanded for further proceedings according to law not inconsistent with this decision.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and cause remanded to the trial court for further proceedings consistent with this opinion. Appellants shall recover of appellees their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Shannon, J., Abele, J. Grey, J.: Concur in Judgment Opinion
Raymond E. Shannon, retired Judge of the First District, sitting by assignment.
Lawrence Grey, retired Judge of the Fourth District, sitting by assignment.
 ------------------------- Raymond E. Shannon, Judge
 --------------------- Peter B. Abele, Judge
 -------------------- Lawrence Grey, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.